**SPLOSNA PLOVBA OF PIRAN,**
Plaintiff,

v.

**AGRELAK STEAMSHIP CORPORA-**
**TION, Defendant.**

**AGRELAK STEAMSHIP CORPORA-**
**TION, Defendant and Third-Party**
**Plaintiff,**

v.

**GEMINI SHIPPING ENTERPRISES,**
**INC., et al., Third-Party**
**Defendants.**

No. 74 Civ. 360.

United States District Court,
S. D. New York,
Civil Division.

Sept. 27, 1974.

striking the "Fourth Cause of Action" and the prayer for declaratory judgment. This motion was granted on May 20, 1974.

Cichanowicz & Callan, New York City, for plaintiff by Byron King Callan, and Michael L. Corbett, New York City, of counsel.

Donovan, Donovan, Maloof & Walsh, New York City, for defendant and third party plaintiff by Richard E. Repetto, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This motion for summary judgment by plaintiff, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, raises the question of whether this court can enter judgment based on an award of arbitrators in London, where that award has not been reduced to judgment in London.

Plaintiff, Splosna Plovba of Piran (Splosna) and defendant, Agrelak Steamship Corporation (Agrelak), entered into a New York Produce Exchange Time Charter dated London, February 24, 1968. Under the terms of clause 17 of the charter, both parties agreed, that should any dispute arise between them, the matter would be referred to arbitrators in London, whose decision would be final.[1]

No dispute arose between the parties prior to February 3, 1971, at which time third-party defendant Gemini Shipping Enterprises, Inc. (Gemini) entered into a sub-time charter, according to which Gemini undertook to operate the same vessel. Subsequenly, certain disputes arose between Splosna and Gemini, and Splosna demanded arbitration according to clause 17 of the charter, against Agrelak only. Gemini agreed to prosecute the arbitration in the name of Agrelak and to indemnify Agrelak for liability as determined in the arbitration.

On August 23, 1973 the arbitrators awarded Splosna the principal sum of $162,487.75, plus interest thereon at the rate of 7.5% per annum from June 1, 1972 until August 20, 1973, which interest amounts to $14,840. The arbitrator also awarded costs of $3,427.36, for a total award of $180,755.11. Splosna claims that Agrelak has paid it $86,183.48 pursuant to the award, still owing $94,571.-63 for which amount Splosna has brought this litigation. Defendant asserts in its affidavit in opposition to the motion for summary judgment, that payments have been made to plaintiff in the amount of $126,183.48.

Plaintiff Splosna, in moving for summary judgment asserts that, since the clause pursuant to which both parties agreed to arbitration, provides that the award "shall be final, and for the purpose of enforcing any award, this agree-

[1]. 17. "That should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three persons in London, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men".

ment may be made a rule of the Court", it is not necessary for a London Court to enter judgment on the London arbitration award before plaintiff is entitled to a judgment of enforcement from this Court.

Defendant Agrelak on the other hand, argues that, since paragraph 17 of the charter does not expressly provide that a court shall have jurisdiction to enter judgment upon an award pursuant thereto, this court does not have jurisdiction to enter summary judgment.

■ In signing the charter agreement, both parties agreed to arbitration in London, carefully replacing the standard printed charter language which would have required arbitration to take place in New York. By so doing, the parties implicitly agreed that British law should apply to the arbitration, since it is a recognized principle that the law of the country in which the arbitration proceeding takes place governs, unless the parties to such arbitration agree to the adoption of laws of a different jurisdiction. Cf. Restatement (Second) of Conflicts § 220 (1969).

■ Therefore, by agreeing to accept British law, the parties implicitly agreed to accept the award of the arbitrators made in London pursuant to the British Arbitration Act of 1950 (heretofore referred to as "the Act").[2]

Section 1 of the Act provides that the authority of the arbitrator shall be irrevocable except by leave of the High Court,[3] and Section 16 provides that, unless otherwise agreed, the decision of the arbitrators shall be final and binding on the parties.[4] Furthermore, Section 26

provides that an arbitration agreement may be enforced only by leave of court pursuant to which judgment may be entered in terms of the award.[5] Similarly, in the case of a Japanese award, it has been held that such a foreign arbitration award, where a judgment has been entered in the foreign country in which the award was made, may be enforced in a United States Court. In re Fotochrome, 377 F.Supp. 26 (E.D.N.Y.1974).

In the instant situation, there is no express language in the arbitration clause providing that a judgment of the court shall be entered upon the award. Rather, the parties agreed that the award "shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court." Under Section 16 (*supra*) of the Act, by "final" is meant that the award is "unappealable" subject only to the power of the court to remit or set aside the award pursuant to Sections 21–23.

In an analogous situation where the arbitration was held within the United States, in Varley v. Tarrytown Associates, Inc. (2d Cir. 1973) 477 F.2d 208, the Second Circuit held that even though the rules of the American Arbitration Association were incorporated by reference into the arbitration agreement, more reference to the rules was not sufficient to act as a consent to the entry of judgment by the Court. Since the parties did not further explicitly agree that judgment should be entered upon the award, the Court asserted that the district court did not have jurisdiction to confirm the award. Consistently, in Island Territory of Curacao v. Solitron

2. The Act consolidated without amendment the Arbitration Acts of 1889 to 1934.

3. Section 1. "The authority of an arbitrator or umpire appointed by or by virtue of an arbitration agreement shall, unless a contrary intention is expressed in the agreement, be irrevocable except by leave of the High Court of judge thereof".

4. Section 16. "Unless a contrary intention is expressed therein, every arbitration agreement shall, where such a provision is ap-

plicable to the reference, be deemed to contain a provision that the award to be made by the arbitrator or umpire shall be final and binding on the parties and the persons claiming under them respectively".

5. Section 26. "An award on an arbitration agreement may, by leave of the High Court or a judge thereof, be enforced in the same manner as a judgment or order to the same effect, and where leave is so given, judgment may be entered in terms of the award".

Devices, Inc. (2d Cir. 1973) 489 F.2d 1313, 1319, the Court stated:

> "It is not insignificant that the Federal Arbitration Act itself makes a very clear distinction between action on an award and action on a judgment enforcing the award, pointing out that application for an order confirming the award may be made only when 'the parties in their agreement have agreed that a judgment of the court shall be entered upon the award' . . . ." 9 U.S.C. § 9.

Furthermore, Section 26 of the British Act explicitly provides for enforcement procedures for an arbitration award. As the comments to that Section indicate, the purpose is to enforce an award only where the rights and liabilities of the parties have been definitely settled and cannot be further litigated. In the instant case, although there has been an award, there has been no judgment entered in England or anywhere else. Pursuant to Section 26 of the Act, the application to enforce the award should be made by originating summons in the Queens Bench Division before a judge in chambers or a master, and no appearance need be entered. This has not been done.

In sum, in the instant situation, the arbitrators have made a final award to plaintiff but plaintiff has failed to have judgment entered upon that award in London. Until such judgment is entered in London, without express language providing for entry of judgment in the arbitration agreement, this court does not have jurisdiction to enter judgment on this arbitration award.

It should be noted that England is not a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq. (1970).

 The arbitration award has not attained finality as to enforcement according to British law. In such a situation, law and public policy support denial of a motion for summary judgment. With international commerce growing constantly, and the interaction of national economies with political conventions increasing, stability of expectation in the resolution and enforcement of disputes through arbitration, is critical. Under such circumstances, where two parties agree to arbitration in a foreign forum, the laws of that forum must be honored, and any short-cutting of appropriate legal procedure must be discouraged.

Accordingly, the motion for summary judgment must be denied. The disposition of this motion further suggests that plaintiff's complaint which is based on this arbitration award should be dismissed. Since plaintiff has not addressed himself specifically to this point, the court will allow plaintiff twenty (20) days from the entry of this order to submit memoranda on the issue of the sufficiency of the complaint. Otherwise, the complaint will be dismissed. If memoranda are filed, defendant will be given ten (10) days to reply, and the question will be taken under advisement.

So ordered.